UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DAMON PATTERSON                                    CIVIL ACTION

VERSUS                                             NO. 06-7322

ORLEANS PARISH D.A. OFFICE ET AL.                  SECTION "B" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Damon Patterson, is a prisoner currently incarcerated in the Orleans Parish Prison system ("OPP") in New Orleans, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the Orleans Parish District Attorney's Office, Orleans Parish Criminal District Court Judge Raymond Bigelow, New Orleans Police Officer G. Kessel, Orleans Parish Criminal Sheriff Marlin Gusman, Louisiana State Penitentiary ("Angola") Warden Burl Cain, the Medical Director at Angola and Lt. Bradley.[1]

Plaintiff makes the following claims:  (1) false arrest by Officer Kessel; (2) illegal search by Officer Kessel; (3) seizure of personal property by Officer Kessel; (4) excessive force by Officer Kessel; (5) false imprisonment by Sheriff Gusman; (6) malicious prosecution by Orleans Parish District Attorney Eddie Jordan; (7) malicious prosecution by Judge Bigelow; (8) inadequate medical care at Angola;

_____

[1] Plaintiff has voluntarily dismissed his claims against two other defendants, Orleans Parish Criminal Sheriff's Deputy Washington and the OPP medical director.  Record Doc. No. 35.

(9) wrongful confinement in a disciplinary cellblock at Angola without any disciplinary charges or hearing; and (10) confiscation of his personal property at Angola.  He seeks damages and injunctive relief.  Record Doc. No. 1 (Complaint at ¶ V).

In addition, plaintiff has requested in three of his written submissions that he be placed in protective custody.  Record Doc. No. 15, at pp. 3-4; Record Doc. No. 22, at p.4; Record Doc. No. 27, at pp. 6-7.  The court considers these requests as motions for injunctive relief.

On February 15, 2007, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, James Mullally and Patricia Wilton, counsel for defendants.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

On March 15, 2007, Sheriff Gusman filed a Motion for Judgment on the Pleadings Pursuant to Rule 12(c).  Record Doc. No. 39.  Plaintiff was ordered to respond in writing to defendant's motion by April 3, 2007.  Record Doc. No. 41.  On March 21, 2007, Patterson filed a "Written Supplementary as to the Phone Conference," Record Doc. No. 42, which I have considered in addition to his testimony. He also filed a memorandum in opposition to Sheriff Gusman's motion, Record Doc. No. 45, which I have also considered.

2

## THE RECORD

Plaintiff testified that he is currently incarcerated on a possession of cocaine charge, for which he was arrested on April 25, 2006.  He said he has not yet been convicted of that charge and he was scheduled to return to court on his criminal charge on March 5, 2007.  He also stated that, when he was arrested, he was on parole for a 1997 conviction for receiving stolen property, for which he received a 15-year sentence.  He said that a parole hold was placed on him when he was arrested, but that the parole revocation hearing has been deferred until after his criminal trial is held.

Patterson confirmed that the claims he makes in this case against Sheriff Gusman are related to several time periods when he was incarcerated in the House of Detention ("HOD") in the OPP, from the date of his arrest through June 22, 2006; from July 7, 2006 through August 31, 2006; from September 17, 2006 through October 26, 2006; and from November 20, 2006 through the date of the telephone conference.  He stated that his claims against Warden Cain and Lt. Bradley arise from three periods of incarceration at Angola from June 23, 2006 through July 6, 2006; from September 1, 2006 through September 16, 2006; and from October 27, 2006 through November 19, 2006.

As to his claims against Officer Kessel, plaintiff testified that he was stopped for a traffic violation and he did not have a driver's license.  He said that, when he arrived at Central Lockup, he had numerous traffic violations on record, one of which was

3

driving with a suspended driver's license, and that Officer Kessel charged him with that. However, he testified that the charge was incorrect because he has never had a driver's license, so he could not have had one suspended.

Patterson said that Officer Kessel arrested him for running a stop sign, but that no stop sign existed on the street. He testified that he was also arrested for disregarding an officer's signal. He said he was processed for the traffic violations and a parole violation, although he stated that he had no outstanding warrants for any parole violation and he had just seen his parole officer about 10 days earlier.

Plaintiff testified that he was released on the traffic violations and was about to be released from the system when he was brought before a magistrate judge to have a bond set for the drug charge, for which he was never booked and of which he was not aware until he appeared before the magistrate judge. He stated that he was falsely arrested on the traffic violations and falsely accused of having drugs in his pocket.

Patterson said that Officer Kessel confiscated $1,900 from him, but only reported taking $486. He said that Officer Kessel also confiscated the keys to the vehicle that Patterson was driving and never turned in the keys or gave them to the owner of the vehicle, who was a friend of Patterson's. He testified that Officer Kessel also confiscated a prosthetic leg brace that Patterson was wearing. He said the officer made him take off his shoes and remove the brace, but the officer never reported it or turned it in.

4

Plaintiff stated that Officer Kessel used excessive force by pulling him out of the car and making him take off his shoes so he could remove his leg brace. He testified that Officer Kessel handcuffed him, then ordered him to remove his shoes, but he could not do so while handcuffed. He said he has a permanent foot drop and that, when Officer Kessel took his brace off, he was falling and Officer Kessel pushed him into the back seat of the police car. He stated that he hit his head and shoulder on the car. Patterson testified that his right leg does not bend because of permanent nerve damage and that he scraped and bruised his leg when he was pushed into the car. He stated that his leg subsequently became infected and he had a lot of swelling in his ankle area, which would be reflected on the OPP medical records. He said he thought he had been diagnosed with something like an aggravated hairline fracture.

Patterson testified that he cannot put his arms behind his back while handcuffed because he had a prior shoulder injury, so he asked Officer Kessel to adjust the cuffs. He stated that another officer put two sets of cuffs on him and gave him some slack in the cuffs behind his back.

Concerning his claim against Sheriff Gusman, plaintiff testified that he was originally charged with possession with intent to distribute crack cocaine and cocaine. He stated that, although the District Attorney refused the charges on June 23, 2006, he was sent to Angola on that date and was never released on those charges. He said that

5

he was then charged with possession of cocaine. He testified that, every time he went to Angola, he was held on the original charges that had been refused and the original charges were not deleted from the computer system until he returned to OPP on November 20, 2006. He stated that Sheriff Gusman was responsible for the erroneous information in the computer system.

Patterson testified that District Attorney Jordan is maliciously prosecuting him based on a false police report and without probable cause.

As to Judge Bigelow, plaintiff stated that the judge was biased and prejudiced against him personally. Patterson stated that Judge Bigelow said that he would not release plaintiff under any circumstances and that it would be in plaintiff's best interest to have a jury trial because the judge was going to find him guilty. Plaintiff said that Judge Bigelow made two false statements on the record: (1) that the bill of information was filed on June 23, 2006, although the date on the bill of information that plaintiff had in his hand was June 27, 2006, and that plaintiff should ignore the date on the bill of information that he had because it was incorrect; and (2) that he was going to find Patterson guilty "no matter what" because of his criminal history.

Plaintiff also testified that he had made additional allegations against Judge Bigelow in his written submissions, which he could not remember during the conference. His written submissions include allegations that Judge Bigelow allowed his prosecution

6

to continue despite knowing that no probable cause existed and that the officer's report was false.  In his supplemental statement filed on March 21, 2007, Patterson states that Judge Bigelow refused to read the bill of information at a hearing held on July 11, 2006 and "committed perjury" when he stated that the bill was filed on June 23 instead of on June 27, 2006 and when he told plaintiff that the State had two years to file a bill of information, instead of 60 days.  Plaintiff complains that Judge Bigelow denied various motions based on the erroneous filing date.  Record Doc. No. 42.

As to his claim against Warden Cain, Patterson stated that Angola officials took away all his legal paperwork concerning traffic court, criminal court and this court on October 27, 2006, and he never saw it again.  He said the paperwork showed that the magistrate judge had dismissed the possession of cocaine charge against him on June 26, 2006, three days after the original charges were refused.  He stated that a lawyer, Kendall Green, represents him in his criminal proceedings.

He also testified that Angola officials put him in a disciplinary cell block on October 27, 2006 without any disciplinary action or hearing against him, and he was held there for almost 30 days.  He said that he was threatened and pushed around while he was there by several ranking officers.

Plaintiff further testified that every time he went to Angola he had personal property valued in excess of $250 to $300 that his family had given him, which was

7

taken away from him and never returned.  He stated that this included an egg crate mattress for a bad back and medication that non-medical officials confiscated.

Patterson said that his claim against Lt. Bradley arises from a time that he was on the rodeo grounds at Angola and was using crutches, but he could not keep up with the other inmates.  He said Lt. Bradley took the crutches from him and told him he had better crawl to the kitchen if he wanted to eat.  He said a couple of inmates helped him get to the cell block after his crutches were taken.  Plaintiff stated that he has a claim against Lt. Bradley for confiscating his personal property.

He stated that he submitted ARP forms and wrote letters to Warden Cain about all of these incidents but received no response.

As to his claim against the Angola Medical Director, plaintiff testified that each time he arrived at Angola, medical personnel terminated his medications for pain, "nerves" and blood pressure that he had been taking for ten years.  He said they gave him only Motrin initially, but that the doctor later prescribed "Tora-something," which he found out was used for psychiatric patients.

Patterson confirmed that he had received a copy of his medical records and that the records were accurate.  He said he was not aware that Dr. Singh had prescribed crutches, as the medical records indicate.  He testified that he saw a doctor during the second and third times that he was at Angola, but not during the first stay.

Plaintiff said that he saw a nurse, not a doctor, when he arrived on June 23, 2006. He said that a nurse interviews the inmate upon arrival, but he never saw a doctor the first time because he was put into the cell block the next day.  He said that Dr. Singh might have ordered crutches without seeing him.  Patterson could not recall the name of the doctor he saw at Angola.

Plaintiff's certified medical records from Angola indicate that he was examined by a nurse on June 23, 2006.  He reported a history of hypertension, asthma, a gunshot wound in June 2005 and a motor vehicle accident in August 2005, and current medications of hydrocortisone, atenolol,[2] Neurontin,[3] Norvasc[4] and Ultram.[5]  Plaintiff reported poor circulation as a result of the gunshot wound, a paralyzed right leg from the

---

[2]Atenolol (brand name:  Tenormin) is a beta blocker "used in the treatment of high blood pressure . . . [and occasionally] . . . for treatment of alcohol withdrawal, prevention of migraine headache, and bouts of anxiety."  PDRhealth, avail. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ten 1434.shtml.

[3]Neurontin (generic name: gabapentin) "may be prescribed with other medications to treat partial seizures (the type in which symptoms are limited).  It can be used whether or not the seizures eventually become general and result in loss of consciousness.  Second, it can be used to relieve the burning nerve pain that sometimes persists for months or even years after an attack of shingles (herpes zoster)."  Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/neu1289.shtml.

[4]Norvasc (generic name:  amlodipine besylate) is prescribed for angina and high blood pressure.  Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/nor1306.shtml.

[5]Ultram (generic name:  tramadol hydrochloride) "is prescribed to relieve moderate to moderately severe pain."  Id. at http://www.pdrhealth.com/drug_info/rxdrugprofiles/drugs/ult1467.shtml.

knee down with foot drop,[6] swelling in his right leg and back pain.  Physical examination revealed that he ambulated with some difficulty, could not walk without some assistance and was in mild distress with swelling in his lower right leg secondary to a lower right femur operation.  The surgical site appeared swollen and discolored.  The nurse recommended Tylenol immediately, physical exercise and temporary duty status.  Patterson requested a wheelchair or crutches.  In separate entries, a doctor noted "crutches OK for six months," and Dr. Singh noted that plaintiff could use a cane for one year.  On June 26, 2006, a prescription was written for crutches for six months.

Plaintiff submitted health care request forms on June 30, 2006 and July 6, 2006, complaining of pain.  He requested Neurontin, Ultram and medications for asthma, an egg crate mattress and his leg brace, and asked to be placed on the medical dorm and to see a doctor.  Both times it was noted that he had a doctor's appointment scheduled.  Patterson testified that he was transferred to OPP on July 7, 2006.  There are no further medical records from Angola.

---

[6]Foot drop is a "[p]artial or total inability to dorsiflex the foot, as a consequence of which the toes drag on the ground during walking unless a steppage gait is used." Stedman's Medical Dictionary, avail. at http://www.stedmans.com/section.cfm/45.

## ANALYSIS

I.   STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Haddix v. Kerss, No. 04-41636, 2006 WL

11

2861110, at *2 (5th Cir. Oct. 9, 2006); Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents.  A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).  However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'"  Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995);

Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)).  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.  A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the Spears hearing, fails to state a claim under the broadest reading.[7]

---

[7]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

II.    *HECK* AND HABEAS

    A.    *HECK* BARS PLAINTIFF'S SECTION 1983 CLAIMS FOR FALSE ARREST, FALSE IMPRISONMENT AND ILLEGAL SEARCH

Patterson testified that he has not yet been tried on the possession of cocaine charge.  Regardless whether Patterson seeks either injunctive relief or damages under Section 1983 on grounds that he was falsely arrested and falsely imprisoned without probable cause, and illegally searched incident to this arrest, his claims must be dismissed at this time under Heck v. Humphrey, 512 U.S. 477 (1994).

In Heck, the Supreme Court held that a civil action for alleged civil rights violations that attacks the validity of state confinement, which has not been reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus, is not cognizable under Section 1983.

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.  Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

14

Id. at 486-87 (emphasis in original) (footnote omitted).  Thus, Heck precludes Section 1983 claims relating to pending charges when a judgment in favor of the plaintiff would necessarily imply the invalidity of any conviction or sentence that might result from prosecution of the pending charges.

Heck applies to damages claims by pre-conviction detainees as well as by convicted plaintiffs in "situations when the concerns underlying Heck exist."  Beck v. City of Muskogee, 195 F.3d 553, 557 (10th Cir. 1999) (citing cases); accord Harvey v. Waldron, 210 F.3d 1008, 1014 (9th Cir. 2000); Shamaeizadeh v. Cunigan, 182 F.3d 391, 397-98 (6th Cir. 1999); Uboh v. Reno, 141 F.3d 1000, 1006-07 (11th Cir. 1998); Antonelli v. Foster, 104 F.3d 899, 900 (7th Cir. 1997); Jackson, 49 F.3d at 177.

Patterson's damages claims for false arrest, false imprisonment and improper search are connected to the legality of the charges pending against him, and must be dismissed, at least until the underlying charge against him is resolved in his favor, under the facts he alleges in this case.  While it is true that "a claim of unlawful arrest, standing alone, does not necessarily implicate the validity of a criminal prosecution following the arrest," Mackey v. Dickson, 47 F.3d 744, 746 (5th Cir. 1995) (emphasis in original), and that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial

resulting in the § 1983 plaintiff's still-outstanding conviction," <u>Heck</u>, 512 U.S. at 487 n.7 (emphasis added), the circumstances alleged by Patterson require dismissal at this time.

First, whether an arrest is unconstitutional hinges on the absence of probable cause.  <u>Sorenson v. Ferrie</u>, 134 F.3d 325, 328 (5th Cir. 1998).  In <u>Wells v. Bonner</u>, 45 F.3d 90 (5th Cir. 1995), the court held that a Section 1983 claim for false arrest based on lack of probable cause was barred under <u>Heck</u> because a judgment in plaintiff's favor would necessarily imply the invalidity of his conviction on one of the two charges with which he was originally charged, the other charge having been dropped before trial.  The court reasoned:

> The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest.  If there was probable cause for any of the charges made--here either disorderly conduct or resisting a search--then the <u>arrest</u> was supported by probable cause, and the claim for false arrest fails.  Thus, Wells's proof to establish his false arrest claim, i.e., that there was no probable cause to arrest either for disorderly conduct <u>or</u> for resisting a search, would demonstrate the invalidity of Wells's conviction for resisting a search.

<u>Id.</u> at 95 (emphasis in original).  Thus, to the extent Patterson argues that Officer Kessler had no probable cause to arrest him either for traffic violations or a drug charge, and that Sheriff Gusman had no probable cause to continue to hold him, a conviction on the pending charge would establish that probable cause existed to arrest and detain him.

Similarly, as to the improper search claim, a conviction on the pending charge would also establish that the officer had probable cause or that exigent circumstances existed justifying the search.  Thus, if probable cause and/or exigent circumstances exist, facts likely to be established as part of any conviction, the search will not be unreasonable and no Section 1983 claim will be cognizable.

Plaintiff's claims are clearly connected to the validity of the drug possession charge against him.  Heck, 512 U.S. at 479; Hamilton v. Lyons, 74 F.3d 99, 103 (5th Cir. 1997); Boyd v. Biggers, 31 F.3d 279, 283 (5th Cir. 1994).  Patterson testified that the drug possession charge remains pending in the state court system and was set for trial on March 5, 2007.  The charge has not been set aside in any of the ways described in Heck.

Thus, any claims of false arrest, false imprisonment or illegal search in violation of Section 1983 are premature and must be dismissed, until such time that Patterson is acquitted or, if he is convicted, his criminal conviction is set aside.  As the Fifth Circuit has noted, the dismissal of these claims is with prejudice to their being asserted again until the Heck conditions are met.  Johnson v. McElveen, 101 F.3d 423, 424 (5th Cir. 1996).

B.    Habeas Corpus Claims

As stated above, Patterson's complaint in part challenges the very fact and duration of his confinement in connection with the pending charges against him.  Although his suit is styled as a civil rights action under 42 U.S.C. § 1983 and filed on a form normally reserved for Section 1983 complaints, he clearly challenges the validity of his confinement and seeks his release.  This Section 1983 complaint is not the proper action in which to assert these habeas corpus claims.

A prisoner who challenges the very fact or duration of his physical confinement and who seeks judgment that would entitle him to release must pursue habeas corpus relief rather than civil rights relief under Section 1983.  Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Clarke v. Stalder, 121 F.3d 222, 226 (5th Cir.), reh'g en banc granted & opin. vacated, 133 F.3d 940 (5th Cir. 1997), rev'd in part on other grounds & opin. reinstated in relevant part, 154 F.3d 186, 187 (5th Cir. 1998) (en banc); Caldwell v. Line, 679 F.2d 494, 496 (5th Cir. 1982).  Thus, although Patterson filed his complaint on a form reserved for Section 1983 complaints, his claims invoke habeas corpus type relief because he challenges the fact of his confinement.  Clarke, 121 F.3d at 226; Hernandez v. Spencer, 780 F.2d 504, 504 (5th Cir. 1986).

A fundamental prerequisite to federal habeas relief is the exhaustion of all claims in state court before requesting federal collateral relief.  Whitehead v. Johnson, 157 F.3d

18

384, 387 (5th Cir. 1998) (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982)); <u>Nobles</u> <u>v. Johnson</u>, 127 F.3d 409, 419 (5th Cir. 1997).  "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20)).

"The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." <u>Id.</u> (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-78 (1971)).  "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the fairly presented' requirement. . . . This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." <u>Id.</u> (citing <u>Picard</u>, 404 U.S. at 275-78; <u>Nobles</u>, 127 F.3d at 420).  A court may notice sua sponte the lack of exhaustion.  <u>McGee v. Estelle</u>, 722 F.2d 1206, 1214 (5th Cir. 1984).

In the present case, Patterson does not allege and there is no proof that he has exhausted his <u>state court</u> remedies in connection with his claims in this case.  On the contrary, on the first page of his complaint, Patterson indicates that he has not begun any other civil lawsuits in state or federal court dealing with the same facts involved in this action.  Record Doc. No. 1, Complaint, at p.1, ¶ I(A).  Furthermore, research by staff of the undersigned magistrate judge with the Louisiana Supreme Court clerk's office has

19

confirmed that plaintiff has <u>not</u> sought review of the validity of his pretrial detention in the Louisiana Supreme Court.  Charges against him remain pending in the state court.

Accordingly, plaintiff's claims seeking habeas corpus relief must be dismissed without prejudice to allow his state criminal trial to proceed and either acquit him or allow him to pursue state court appellate and post-conviction remedies concerning his criminal conviction, if any, before returning to this court with a properly filed habeas corpus petition.

III.   <u>REMAINING SECTION 1983 CLAIMS</u>

A.   <u>No Physical Injury</u>

Patterson's claim against Officer Kessel for excessive force must be dismissed because he has failed to allege anything other than <u>de minimis</u> physical injury as a result of the alleged force.  Patterson testified that he hit his head and his shoulder and that he scraped and bruised his leg when Officer Kessel pushed him into the car.  He also stated that Officer Kessel handcuffed him too tightly but that another officer double-cuffed him to ease the pressure.

"To succeed on an excessive force claim, [plaintiff] bears the burden of showing: '(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable.'  The injury must be more than <u>de minimis</u> and must be evaluated in the context in which the force

was employed."  Anthony v. Martinez, 185 Fed. Appx. 360, 2006 WL 1716549, at *1

(5th Cir. 2006) (quoting Williams v. Bramer, 180 F.3d 699, 703, clarified, 186 F.3d 633,

634 (5th Cir. 1999)).

> In evaluating excessive force claims, courts may look to the seriousness of
> the injury to determine "whether the use of force could plausibly have been
> thought necessary, or instead evinced such wantonness with respect to the
> unjustified infliction of harm as is tantamount to a knowing willingness that
> it occur."  This Circuit has found an injury insufficient to support an
> excessive force claim where there is no physical injury, see, e.g., Harper v.
> Showers, 174 F.3d 716, 719 (5th Cir. 1999), or where it is extremely minor.
> See Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997) (bruise caused by
> having ear twisted considered de minimis).

Brown v. Lippard, 472 F.3d 384, 386-87 (5th Cir. 2006) (quoting Whitley v. Albers, 475

U.S. 312, 321 (1986)).

The minor injuries that Patterson alleges, a temporarily bruised or scraped head,

shoulder and leg, are like the plaintiff's bruised ear in Siglar, which was sore for about

three days but which did not require medical treatment and caused no long-term damage.

Siglar, 112 F.3d at 193.  The Fifth Circuit held that such an injury was not more than de

minimis and could not support a claim for constitutionally excessive force.  Id.

Furthermore, "'handcuffing too tightly, without more, does not amount to

excessive force.'"  Tarver v. City of Edna, 410 F.3d 745, 752 (5th Cir. 2005) (quoting

Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001)).  Patterson does not allege that

he suffered any injury from the initial handcuffing, which apparently lasted briefly before another officer provided another set of handcuffs.

Accordingly, Patterson's excessive force claim must be dismissed as legally frivolous or for failure to state a claim.

B.   Malicious Prosecution

Patterson claims that he was maliciously prosecuted by the Orleans Parish District Attorney and Judge Bigelow when he was unlawfully arrested without probable cause and charged with possession of cocaine.  The law in the Fifth Circuit concerning the assertion of a malicious prosecution claim under Section 1983 changed significantly with the en banc decision of the court in Castellano v. Fragozo, 352 F.3d 939 (5th Cir. 2003). Under the Fifth Circuit's case law before Castellano, which the Fifth Circuit itself had described as "confused and confusing," Gordy v. Burns, 294 F.3d 722, 725 (5th Cir. 2000), a plaintiff could assert a claim for malicious prosecution under Section 1983 simply by alleging the elements of the state law tort of malicious prosecution in the state where the deprivation of civil rights had occurred.  Formerly, the Fifth Circuit had stated: "[T]he rule in this circuit is that the elements of the state-law tort of malicious prosecution and the elements of the constitutional tort of 'Fourth Amendment malicious prosecution' are coextensive."  Id.

22

Thus, in the federal courts of Louisiana, a Section 1983 plaintiff "had to prove the six elements of malicious prosecution under Louisiana tort law:  (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages."  Id. at 727 (citations omitted).

In Castellano, the en banc Fifth Circuit analyzed Gordy and other precedents and found that the "weak discipline" of those cases "has permitted the blending of state tort and constitutional principles."  Castellano, 352 F.3d at 945.  "With hindsight, our precedent governing § 1983 malicious prosecution claims is a mix of misstatements and omissions which leads to the inconsistencies and difficulties astutely pointed to in Judge Barksdale's dissent from the panel opinion . . . ."  Id. at 949.

The Castellano court held that a malicious prosecution claim under Section 1983 based on the elements of state law tort lacks any constitutional underpinning.  Thus, "we conclude that no such freestanding constitutional right to be free from malicious prosecution exists.  This conclusion in turn means that we must insist on clarity in the identity of the constitutional violations asserted."  Id. at 945.

Judge Duval of this court cogently summarized the reasoning and holdings of Castellano as follows.

23

In <u>Albright v. Oliver</u>, 510 U.S. 266, . . . (1994), the Supreme Court held that it is the Fourth Amendment, and not substantive due process, under which malicious prosecution claims must be judged. <u>Id.</u> at 270. The Court held specifically:

> Where a particular Amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."

<u>Id.</u> at 273. Sitting <u>en banc</u>, the Fifth Circuit has interpreted the <u>Albright v. Oliver</u> holding to mean that "the assertion of malicious prosecution states no constitutional claim." <u>Castellano</u>, 352 F.3d at 953.

In <u>Castellano</u>, the Fifth Circuit held that "'malicious prosecution' standing alone is no violation of the United States Constitution, and that to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." <u>Id.</u> at 942. "[N]o such freestanding constitutional right to be free from malicious prosecution exists." <u>Id.</u> at 945. The court stated further:

> The initiation of criminal charges without probable cause may set in force events that run afoul of explicit constitutional protection–the Fourth Amendment if the accused is seized and arrested, for example, or other constitutionally secured rights if a case is further pursued. Such claims of lost constitutional rights are for violation of rights locatable in constitutional text, and some such claims may be made under 42 U.S.C. § 1983. Regardless, they are not claims for malicious prosecution and labeling them as such only invites confusion.

<u>Id.</u> at 953-54. In requiring that the "anchor of constitutional claims be visible," the Court stated further that "we must insist on clarity in the identity of the constitutional violations asserted." <u>Id.</u> at 960, 945. In sum, the elements necessary to maintain a malicious prosecution . . . are not necessarily adequate to allege a constitutional violation sufficient to invoke § 1983.

Nevertheless, the <u>Castellano</u> court found no reasoned basis for concluding that § 1983 is never available to remedy injuries wrought by a denial of due process. <u>Id.</u> at 956. "Specific constitutional rights guiding a

criminal trial do not spend their force merely in assuring a fair trial, but may also support cause of action under § 1983." Id. . . .

     . . . .

        In Castellano, plaintiff's trial had been severely tainted by the use of perjured and manufactured evidence at trial.  Such obviously abhorrent violations of plaintiff Castellano's right to a fair trial rose to the level of a due process violation.  However, plaintiff Anderson has alleged no such wrongdoing here . . . .  42 U.S.C. § 1983 simply does not apply here.

Anderson v. City of New Orleans, No.03-3010, 2004 WL 1396325, at *5-6 (E.D. La. June 16, 2004) (Duval, J.).

        The same analysis applies to Patterson's malicious prosecution claim in the instant case.  He cannot maintain such a claim under Section 1983 without specifically alleging a constitutional violation.  However, he may persist in a freestanding due process claim under Castellano for "visible" constitutional right violations arising out of his trial.

        I find that Patterson has made no such claims.  He alleges that he was unlawfully arrested without probable cause and that Judge Bigelow knew this.  He also alleges that Judge Bigelow told him the wrong date for the bill of information, denied his motions, told him that he would not be released and said that it would be in his best interest to have a jury trial because the judge was going to find him guilty "no matter what."  These allegations of pretrial misconduct do not allege a violation of his due process rights.

        Albright rejected the contention that the initiation of criminal proceedings without probable cause is a violation of substantive due process, holding that the petitioner must look to the explicit text of the Fourth Amendment as a source of protection for the "particular sort of government behavior"

at issue.  To the point, causing charges to be filed without probable cause will not[,] without more[,] violate the Constitution.  So defined, the assertion of malicious prosecution states no constitutional claim.

Castellano, 352 F.3d at 953 (citing Albright, 510 U.S. at 271, 273).

Accordingly, plaintiff's claim of malicious prosecution under Section 1983 must be dismissed for failure to state a claim.

C.    Judicial Immunity

Plaintiff's claims against Judge Bigelow are barred by judicial immunity.  For more than one hundred years, judges have been held immune from liability for judicial acts done within their jurisdiction.  Stump v. Sparkman, 435 U.S. 349, 356 (1978) (citing Bradley v. Fisher, 80 U.S. 335 (1871)); Mays v. Sudderth, 97 F.3d 107, 110 (5th Cir. 1996).  "A judge, of whatever status in the judicial hierarchy, is immune from suit for damages resulting from any acts performed in [his or her] judicial role."  Ammons v. Baldwin, 705 F.2d 1445, 1447 (5th Cir. 1983) (citations omitted); accord Mays, 97 F.3d at 110-11.  This judicial immunity applies even if a judge is accused of acting maliciously or corruptly.  Stump, 435 U.S. at 356-57; Pierson v. Ray, 386 U.S. 547, 554 (1967), overruled in part on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), as recognized by Hill v. Shelander, 992 F.2d 714, 716 (7th Cir. 1993); Mays, 97 F.3d at 110-11.  Judicial officers are absolutely immune from liability for damages unless they

26

are without jurisdiction.  Id. at 111; Dayse v. Schuldt, 894 F.2d 170, 172 (5th Cir. 1990);

Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir. 1988).

In the past, however, judicial officers did not enjoy absolute immunity from suits

seeking injunctive relief.  Relief of that nature was available under Section 1983 against

state court judges acting in their judicial capacity.  Pulliam v. Allen, 466 U.S. 522, 541-

42 (1984).  However, the Federal Courts Improvement Act of 1996 ("FCIA") amended

Section 1983 to provide that "in any action brought against a judicial officer for an act

or omission taken in such officer's judicial capacity, injunctive relief shall not be granted

unless a declaratory decree was violated or declaratory relief is unavailable."  42 U.S.C.

§ 1983.

The FCIA therefore statutorily overruled Pulliam's holding regarding the

availability of injunctive relief against a state judge in his official capacity.  Guerin v.

Higgins, No. 00-0244, 2001 WL 363486 (2d Cir. Apr. 11, 2001); Nollet v. Justices of the

Trial Ct., 83 F. Supp. 2d 204, 210 (D. Mass. 2000); see also Bolin v. Story, 225 F.3d

1234, 1242 (11th Cir. 2000) (the 1996 amendment to Section 1983 would limit the relief

available from a judge to declaratory relief).  Injunctive relief is not available to Patterson

in this Section 1983 action against Judge Bigelow.  Tesmer v. Granholm, 114 F. Supp.

2d 603, 618 (E.D. Mich. 2000); Nollet, 83 F. Supp. 2d at 210.

Furthermore, to whatever extent, if any, that Patterson seeks an order of this court directing Judge Bigelow to take some action concerning Patterson's state court proceedings, a federal court has no power to direct a state court or its judicial officers in the performance of their duties when mandamus is the only relief sought.  In re Campbell, 264 F.3d 730, 731 (7th Cir. 2001); Santee v. Quinlan, 115 F.3d 355, 356-57 (5th Cir. 1997); Russell v. Knight, 488 F.2d 96, 97 (5th Cir. 1973); White v. Stricklin, No. 3:02-CV-688-D, 2002 WL 1125747, at *2 (N.D. Tex. May 23, 2002); Norman v. Louisiana Supreme Ct., No. 01-2225, 2001 WL 881298, at *1 (E.D. La. Aug. 3, 2001) (Duval, J.).  This court is without authority to order officials of the state court in which plaintiff's criminal case is pending to treat his claims in any particular way or to otherwise interfere with the rulings of its judges.

Patterson's claims against Judge Bigelow are within the scope of the judge's role as a judicial officer and therefore within his jurisdiction.  Consequently, the doctrine of judicial immunity bars Patterson's suit for injunctive relief against Judge Bigelow.  To the extent that plaintiff seeks declaratory relief against Judge Bigelow regarding the validity of his detention, that relief must be sought through petition for writ of habeas corpus and not under Section 1983, as was addressed above in this report.  For these reasons, all of Patterson's claims against Judge Bigelow must be dismissed as frivolous or for failure to state a claim for which relief can be granted.

D.    Prosecutorial Immunity

Patterson named the Orleans Parish District Attorney's Office as a defendant. Section 1983 claims may be asserted only against "persons" as the statute and case law define that term.  The Office of the District Attorney of Orleans Parish is not an entity that can be sued under Louisiana law, nor is it a person capable of being sued under Section 1983.  Burge v. Parish of St. Tammany, No. 91-2321, 1997 WL 10243, at *8 (E.D. La. Jan. 8, 1997), aff'd in part, 187 F.3d 452 (5th Cir. 1999); cf. Steed v. Delohery, No. 96 Civ. 2449(RPP), 1998 WL 440861, *1 (S.D.N.Y. Aug. 4, 1998) (under New York law, county district attorney's office is not a legal entity capable of suing or being sued); Jacobs v. Port Neches Police Dep't, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (same under Texas law).

However, the allegations of Patterson's complaint and Spears testimony are specifically against Orleans Parish District Attorney Jordan.  To whatever extent Patterson may have intended to name Jordan as a defendant, the allegations that plaintiff makes in this case are based solely upon Jordan's actions as a prosecutor in connection with state court criminal proceedings against Patterson.  However, the district attorney is immune from suit for damages in this instance.

Courts employ a "functional" test to determine whether officials are entitled to absolute immunity, in which they look to the "nature of the function performed, not the

identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 227-29 (1988); Hulsey v. Owens, 63 F.3d 354, 356 (5th Cir. 1995). It is well established that prosecutors are immune from liability under Section 1983 for actions taken as an advocate in pursuit of a criminal prosecution. Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); Spivey v. Robertson, 197 F.3d 772, 775 (5th Cir. 1999); Graves v. Hampton, 1 F.3d 315, 318 (5th Cir. 1993), abrogated in part on other grounds by Arvie v. Broussard, 42 F.3d 249, 250 (5th Cir. 1994). This immunity applies to a prosecutor's actions "in initiating prosecution and in carrying the case through the judicial process." Id.; accord Buckley v. Fitzsimmons, 509 U.S. 259, 270, 272 (1993).

Thus, "[a] prosecutor enjoys absolute immunity from personal liability for damages under section 1983 for actions 'initiating a prosecution and . . . presenting the State's case' and those 'intimately associated with the judicial phase of the criminal process.'" Esteves v. Brock, 106 F.3d 674, 676 (5th Cir. 1997) (quoting Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976)). "A prosecutor's absolute immunity will not be stripped because of action that was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Kerr v. Lyford, 171 F.3d 330, 337 & n.10 (5th Cir. 1999) (quotations omitted) (citing Stump, 435 U.S. at 356-57; Butz v. Economou, 438 U.S. 478, 510 (1978)).

However, while prosecutors enjoy absolute immunity from damages liability, they are not immune from Section 1983 suits seeking injunctive relief.  Supreme Ct. of Va. v. Consumers Union of U.S., Inc., 446 U.S. 719, 736-37 (1980) (citing Gerstein v. Pugh, 420 U.S. 103 (1975)).  Patterson appears to seek his release from confinement because he alleges that Jordan is prosecuting him based on a false police report and without probable cause.

Thus, the prosecutor is not immune from suit for declaratory and injunctive relief.  However, Patterson's claims against Jordan are subject to dismissal with prejudice as legally frivolous or for failure to state a claim for which relief can be granted under Heck, without prejudice to his ability to pursue his relief in the appropriate habeas corpus petition, as was further addressed previously in this opinion.

E.      Improper Defendants/Motion for Judgment on the Pleadings

Section 1983 claims may be asserted only against "persons" as the statute and case law define that term.  The Office of the District Attorney of Orleans Parish is not an entity that can be sued under Louisiana law, nor is it a person capable of being sued under 42 U.S.C. § 1983.  Burge v. Parish of St. Tammany, No. 91-2321, 1997 WL 10243, at *8 (E.D. La. Jan. 8, 1997), aff'd in part, 187 F.3d 452 (5th Cir. 1999); cf. Steed v. Delohery, No. 96 Civ. 2449(RPP), 1998 WL 440861, *1 (S.D.N.Y. Aug. 4, 1998) (under New York law, county district attorney's office is not a legal entity capable of suing or being sued);

Jacobs v. Port Neches Police Dep't, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (same under Texas law).

Plaintiff alleges that Sheriff Gusman is in charge of the computer system and that the prison computer system failed to reflect the correct charges against Patterson until November 2006.  Sheriff Gusman argues in his Motion for Judgment on the Pleadings that plaintiff fails to state a claim against him because he does not allege that the Sheriff was personally involved in these actions.

Patterson makes no claim that Sheriff Gusman was personally involved in the incident on which plaintiff's claims are based.  "There is no respondeat superior liability under section 1983."  Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the person allegedly responsible for plaintiff's injury, if any, was in his employ or under his supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).  To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [Sheriff Gusman] . . . and the alleged constitutional violation."  Douthit v. Jones, 641 F.2d 345,

32

346 (5th Cir. 1981).  In the instant action, plaintiff has failed to establish either of these two criteria.

Accordingly, any claims urged by plaintiff against the district attorney's office and Sheriff Gusman are frivolous because they lack an arguable basis in law and fail to state a claim upon which relief can be granted.  Accordingly, Sheriff Gusman's Motion for Judgment on the Pleadings should be granted.

    F.    Medical Care

Patterson testified that his medical care claim concerns Angola medical personnel's termination of his medications for pain, "nerves" and blood pressure, and their failure to have him seen by a doctor during his first stay at Angola from June 23 to July 6, 2006.

Patterson was a pretrial detainee during the time period about which he complains. Before the Fifth Circuit's decision in Hare in 1996, it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  Bell v. Wolfish,  441 U.S. 520, 539 (1979); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987).  The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees." Pfannstiel v. City of

Marion, 918 F.2d 1178, 1186 (5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d 449, 455 (5th Cir. 1992).

In Hare, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.  The Fifth Circuit explained that for the Bell "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Hare, 74 F.3d at 645.

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by

34

prison officials or other state actors.  Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment.  Estelle, 429 U.S. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650.  "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The Farmer definition applies to Eighth Amendment medical claims.  Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment.  "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities."  Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong.  Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza, 989 F.2d at 193.

Further, the plaintiff must establish that the defendant possessed a culpable state of mind.  Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." Mace v. City of Palestine, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 410 (1997)) (additional citations and footnote omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." Norton, 122 F.3d at 291.

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in Hare are at issue in this case. Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm

and disregarded that risk by failing to take reasonable measures to abate it.  In this case, Patterson fails completely to allege facts sufficient to establish deliberate indifference.

Initially, it cannot be concluded that the medical conditions Patterson described, back or leg pain, "nerves" and blood pressure, presented serious medical needs that posed a substantial risk of harm during his incarceration at Angola.  See Dickson v. Colman, 569 F.2d 1310, 1311 (5th Cir. 1978) (inmate who had full range of motion in his shoulder despite continuing pain from old injury did not have serious medical need); Lusk v. Dallas County Sheriff's Dep't, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (Lindsay, J.) (herniated disc and degenerative spinal disease not serious medical needs); Nelson v. Rodas, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (back spasms and pain not a serious medical need).  Patterson's testimony about his conditions did not identify any serious risk of harm or any actual harm resulting from the alleged denial of treatment, and these conditions do not rise to the level of serious medical needs for purposes of constitutional analysis.

Even assuming that plaintiff's medical problems were serious conditions for constitutional purposes, he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials.  Plaintiff's complaint, as amended by his testimony and confirmed by the medical records, shows that he received constitutionally adequate medical attention while incarcerated at the jail.

Although Patterson complains that Angola officials took away his medications, he testified, and the medical records confirm, that he was given Motrin or Tylenol for pain when he arrived on June 23, 2006.  He said that he later received a prescription for "Tora-something."  On June 26, 2006, a prescription was written for crutches.  Plaintiff submitted health care request forms on June 30, 2006 and July 6, 2006.  Both times it was noted that he had a doctor's appointment scheduled.  However, Patterson was transferred back to OPP on July 7, 2006.

Contentions like Patterson's that amount to a mere disagreement with the speed, quality or extent of medical treatment or even negligence do not give rise to a Section 1983 claim.  For example, he disagrees with the decision to take away his prescription pain medication and replace it with Motrin or Tylenol.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."  Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of prisoner's serious medical condition, which ultimately resulted in death, does not constitute deliberate indifference, even if treatment was negligently administered); see also Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983

claim); Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990) (provision of medical treatment is inconsistent with inference of deliberate indifference).

"Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Deliberate indifference is an extremely high standard to meet." Gobert, 463 F.3d at 346 (citations and internal quotations omitted). No such showing has been made on the current record.

Therefore, plaintiff's complaints in this case about his medical care at Angola, including the termination of his prescription medications and their replacement with Motrin or Tylenol, advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

G.    Loss or Deprivation of Property

Patterson claims that Officer Kessel confiscated his cash, leg brace and car keys, did not report the majority of the cash and did not return the leg brace to him or the keys to the vehicle's owner. He also alleges that personal property, including an egg crate mattress, which he was not allowed to bring with him when he was transferred to another prison facility, was seized or otherwise misappropriated by some of the defendants.

39

Construed broadly, these allegations may constitute a complaint that Patterson was deprived of his property in violation of his due process rights.  However, plaintiff fails to state a cognizable Section 1983 claim, and his claim must be dismissed.

In deciding whether state action has violated an individual's right to due process, the court must address two questions: "whether the state action has deprived the individual of a protected interest--life, liberty or property," and if so, "whether the state procedures available for challenging the deprivation satisfy the requirements of due process."  Augustine v. Doe, 740 F.2d 322, 327 (5th Cir. 1984); accord Neuwirth v. Louisiana State Bd. of Dentistry, 845 F.2d 553, 556 (5th Cir. 1988); Cuellar v. Texas Employment Comm'n, 825 F.2d 930, 934 (5th Cir. 1987).

The United States Supreme Court has consistently ruled that a prisoner's property and due process rights are circumscribed by his custodial status.  In general, the Court has ruled that a state actor's random and unauthorized deprivation of a prisoner's property, whether negligent or intentional, does not result in a violation of due process rights if the state provides an adequate post-deprivation remedy.  Alexander v. Ieyoub, 62 F.3d 709, 712 (5th Cir. 1995) (citing Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)).

More specifically, in <u>Parratt</u>, a state prisoner, like Patterson, sued prison officials under Section 1983 alleging that their negligent loss of a hobby kit he had ordered from a mail order catalog deprived him of property without due process of law.  The United States Court of Appeals for the Eighth Circuit affirmed the district court's summary judgment in the prisoner's favor, but the Supreme Court reversed, finding that no due process violation occurs when a state employee negligently deprives a prisoner of property, provided that the state makes available a meaningful post-deprivation remedy. <u>Parratt</u>, 451 U.S. at 543-44 (<u>cited in</u> <u>Hudson</u>, 468 U.S. at 532).

In <u>Hudson</u>, a state prisoner filed suit under Section 1983, alleging that the correctional officer defendants had "conducted a 'shakedown' search of (the prisoner's) locker and cell for contraband," and had "intentionally destroyed certain of his noncontraband personal property during the . . . search." <u>Hudson</u>, 468 U.S. at 519-20. The Court specifically approved the conduct by prison officials of "wholly random searches" or "routine shakedowns of prison cells" as "essential" to the effective security and administration of prisons. <u>Id.</u> at 529.  Finding that the state had provided an adequate post-deprivation remedy for the alleged destruction of the prisoner's property, the Court found no violation of the prisoner/plaintiff's rights actionable under Section 1983.  "We hold that the Fourth Amendment has no applicability to a prison cell.  We hold also that, even if (the officers) intentionally destroyed (the prisoner's) property during the

challenged shakedown search, the destruction did not violate that Fourteenth Amendment since the (state) has provided (the prisoner) an adequate post-deprivation remedy." Id. at 536.

The Fifth Circuit has recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. Copsey v. Swearingen, 36 F.3d 1336, 1342-43 (5th Cir. 1994); Marshall v. Norwood, 741 F.2d 761, 764 (5th Cir. 1984).

Thus, the deprivation of property alleged by Patterson in this case, whether negligent or intentional, is precisely the kind of prisoner's claim as to which the Fifth Circuit has consistently affirmed dismissals by applying the Parratt/Hudson doctrine. Such dismissals are mandated even when the plaintiff has alleged that the property deprivation violates some prison regulation or policy. See Myers v. Klevenhagen, 97 F.3d 91 (5th Cir. 1996) (no due process violation when prison officials debited inmate's prison account to pay for medical services provided in prison, even when the action violated the prison's own policies, procedures or regulations); Murphy v. Collins, 26 F.3d 541 (5th Cir. 1994) (inmate's Section 1983 claim that his dictionary (later destroyed as contraband), cup and bowl were confiscated without regard to prison policy was properly dismissed when adequate state post-deprivation remedies existed).

Plaintiff's state law remedy for the alleged negligent or intentional deprivation of his property lies in a conversion or other tort suit for damages in state court. Because no constitutional violation has been alleged, his complaint fails to state a claim for which relief may be granted pursuant to Section 1983 and/or is legally frivolous and must be dismissed. Plaintiff remains free to pursue his claim concerning his seized property in state court against the state officials who allegedly seized the property improperly.

H.   Prisoner Classification

Patterson testified that, when he arrived at Angola on October 27, 2006, he was put into a disciplinary cell block without any disciplinary action or hearing against him, and he was held there for "almost 30 days." These allegations attempt to state a claim for denial of due process.

Plaintiff has no constitutional right to a particular status or classification within any prison. The classification of inmates is an administrative function of the prison. Jones v. Diamond, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc).[8] Courts accord great deference to prison officials' administrative decisions and will not interfere with legitimate administration without a constitutional violation. Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Smith v. Bingham, 914 F.2d 740, 742 (5th Cir. 1990). "Inmates

_____

[8] Overruled on other grounds by International Woodworkers of Am. v. Champion Int'l Corp., 790 F.2d 1174 (5th Cir. 1986), aff'd sub nom. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437 (1987).

have a federal right to due process at prison classification . . . only if state law contains 'substantive predicates' limiting the prison administrators' discretion to classify, assign, and punish inmates." Ricker v. Leapley, 25 F.3d 1406, 1409 (8th Cir. 1994); accord Canterino v. Wilson, 869 F.2d 948, 953 (6th Cir. 1989) (citing Hewitt v. Helms, 459 U.S. 460, 472 (1983)). "Classification of inmates in Louisiana is a duty of the . . . [jailer] and an inmate has no right to a particular classification under state law." Woods v. Edwards, 51 F.3d 577, 581-82 (5th Cir. 1995) (citation omitted).

Thus, "[i]nmates have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials." Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998) (citations omitted), abrogated on other grounds by Booth v. Churner, 532 U.S. 732, 735 (2001).

The same analysis applies so long as Patterson is being held in lockdown based on his criminal history, rather than for disciplinary reasons.

> In resolving the nature of the liberty interest and the process that is
> due for confinement of prisoners in extended lockdown under these
> circumstances, it is crucial to know whether, based on their crimes of
> conviction, the inmates' confinement is the result of an initial classification
> by prison officials as opposed to confinement for violations of less serious
> prison disciplinary rules. Generally, courts are not concerned with a
> prisoner's initial classification level based on his criminal history before his

<u>incarceration</u>.  This circuit has continued to hold post-<u>Sandin</u> that an inmate has no protectable liberty interest in his classification.

<u>Wilkerson v. Stalder</u>, 329 F.3d 431, 435-36 (5th Cir. 2003) (citing <u>Sandin v. Conner</u>, 515 U.S. 472 (1995)) (additional citations omitted) (emphasis added).  Thus, the <u>Sandin</u> due process test (which is discussed below) would <u>only</u> be triggered if Patterson's "confinement in extended lockdown is <u>not</u> the result of [his] initial classification."  <u>Id.</u> (emphasis added).

Patterson testified that he was placed into a disciplinary cellblock immediately upon his arrival at Angola without any disciplinary charges or hearing.  Thus, it appears likely that he was placed there based on his criminal history, which included a prior conviction for receiving stolen property, a pending felony charge and a parole hold.

Plaintiff's complaint concerning improper classification at the jail is not an abuse of the discretion the law assigns to prison officials and with which this court should not interfere.  No violation of Patterson's federal constitutional rights occurred under the classification circumstances described in his complaint.

I.    <u>Disciplinary Confinement</u>

To the extent that plaintiff may be claiming that his long-term lockdown was imposed as punishment based on false or inadequate disciplinary charges or as a result of procedures that violated his due process rights, <u>Sandin</u> provides the analysis.

45

In Sandin, the United States Supreme Court held that analysis of a prisoner's due process claim relating to prison disciplinary action begins with determining whether a constitutionally protected liberty interest exists.  Sandin, 515 U.S. at 481-83.  "Liberty interests protected by the Fourteenth Amendment may arise from two sources–the Due Process Clause itself and the laws of the States."  Hewitt, 459 U.S. at 466.  In Sandin, the Supreme Court recognized that although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 484 (citations omitted).  Thus, in Sandin, when a prisoner was placed in disciplinary segregation for 30 days and the discipline did not inevitably affect the duration of his sentence, the Court held that due process does not require that a prisoner be afforded the procedural mechanisms previously prescribed in Wolff v. McDonnell, 418 U.S. 539 (1974), and Hewitt, 459 U.S. at 460.

"[T]he Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner."  Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997).  The Madison court held that a prisoner's 30-day commissary and cell restrictions imposed as punishment for disciplinary violations were "merely changes in the conditions of his confinement and do not implicate due process concerns."  Id. at 768; accord Dixon v. Hastings, 117 Fed. Appx. 371, 2005 WL 17382,

46

at *1 (5th Cir. 2005); Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000).  The court

further held in Madison that such restrictions are "penalties, which do not represent the

type of atypical, significant deprivation in which a state might create a liberty interest."

Madison, 104 F.3d at 768.  Examples of disciplinary hardships that would qualify as so

atypical and significant as to implicate due process considerations include unwanted

administration of anti-psychotic drugs, involuntary commitment to a mental hospital or

extension of the prisoner's sentence for his underlying criminal conviction.  Sandin, 515

U.S. at 484.

In Wolff, the Supreme Court held that because disciplinary proceedings are not

part of a criminal prosecution, the prisoner need not be afforded "the full panoply of

rights" provided in criminal proceedings.  Wolff, 418 U.S. at 556.  Nevertheless, the

Wolff Court held that prison officials must afford the prisoner some due process in

disciplinary proceedings before imposing punishment, including notice of the violation,

a hearing and some opportunity to present evidence on the prisoner's behalf.  Id.

In the instant case, Patterson's testimony and his written submissions establish that

the only alleged punishment that he received was confinement to a working cell block.

This punishment does not constitute such an "atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life" that particular forms of process

were required.  Sandin, 515 U.S. at 484; see Dixon, 2005 WL 17382, at *1 ("loss of

47

commissary privileges, cell restriction, placement in administrative segregation, and extended work schedule were not atypical punishments requiring due process protections"); Payne v. Dretke, 80 Fed. Appx. 314, 2003 WL 22367564, at *1 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause"); Madison, 104 F.3d at 768 (same). No claim of violation of due process rights cognizable under Section 1983 can be stated as to these matters.

IV.   MOTION FOR INJUNCTIVE RELIEF

As noted above, Patterson has asked in his various written submissions that the court order that he be placed in protective custody. The court treats these requests as motions for injunctive relief.

According to Rule 65(b) of the Federal Rules of Civil Procedure, a party seeking a temporary restraining order and/or preliminary injunction must set forth "specific facts shown by affidavit or verified complaint" that show that the moving party will suffer irreparable injury before a hearing on the matter may be held. A temporary restraining order and preliminary injunction are extraordinary equitable remedies that may be granted only if plaintiff establishes four essential elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the

48

injunction might cause defendants; <u>and</u> (4) that the injunction will not disserve the public interest. <u>Sugar Busters LLC v. Brennan</u>, 177 F.3d 258, 264 (5th Cir. 1999). The requisite showing is "a <u>substantial</u> threat of <u>irreparable</u> injury if the injunction is not issued." <u>DSC Commc'ns Corp. v. OGI Techs., Inc.</u>, 81 F.3d 597, 600 (5th Cir. 1996) (emphasis added).

Applying the foregoing legal standards to the facts he alleges, plaintiff's written submissions and the record to date establish that he is <u>not</u> entitled to a temporary restraining order or preliminary injunction. Although plaintiff's written submissions alleges that his "life is at risk" from Warden Cain and that Angola officials told him he would not "be so lucky" if he came back to Angola, Record Doc. No. 22 at p.4, and that "I know they will use extreme physical measures" when he refuses to go back to Angola, Record Doc. No. 27, at p.6, these wholly unsubstantiated allegations are the rankest form of speculation, and Patterson has not established that any injury he may suffer in the future would be irreparable. Any cognizable injury that he may suffer as a result of defendants' alleged or anticipated actions may adequately be remedied through the ordinary judicial process without need for a preliminary injunction or temporary restraining order.

It also cannot be concluded that plaintiff's complaint presents "a substantial likelihood of success on the merits." <u>DSC Commc'ns Corp.</u>, 81 F.3d at 600. Although

plaintiff's allegations must be accepted as true for the initial screening process required for such cases, 28 U.S.C. § 1915A; <u>Martin v. Scott</u>, 156 F.3d 578 (5th Cir. 1998), and I have done so above, no such requirement applies to his request for injunctive relief. Patterson has not clearly alleged at this early stage of the proceedings that a violation of his clearly established constitutional rights has occurred.  Moreover, because Patterson seeks an injunction, injunctive relief interfering with the administration of prison functions by the court, without justification, would disserve the public interest.

For all of these reasons, plaintiff's motion for injunctive relief should be **DENIED**.

## <u>RECOMMENDATION</u>

For the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint asserting claims pursuant to 42 U.S.C. § 1983 be **DISMISSED WITH PREJUDICE**, either as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) or under <u>Heck</u>.

**IT IS FURTHER RECOMMENDED** that all habeas corpus claims asserted in the complaint be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

**IT IS FURTHER RECOMMENDED** that plaintiff's motion for injunctive relief be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Sheriff Gusman's Motion for Judgment on the Pleadings Pursuant to Rule 12(c), Record Doc. No. 39, be **GRANTED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___16th___ day of April, 2007.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE